the administrator, on the affidavit of Yeatman, Sept. 1, 1829, who stated that at the November term he was appointed guardian, ad litem, as a prerequisite by the court, to the attainment of an order to sell the land, was the exercise of a discretion which no court, in a collateral manner, can disregard or treat as a nullity. It was not, in fact, the amendment of a judgment or an order. It was supplying the omission of the clerk in failing to enter, as his duty required, the appointment. The court was satisfied from the evidence, that the appointment had been made by them, and that the clerk had failed to perform his clerical duty in entering it. The case had proceeded upon the presumption that the entry of the appointment had been made as ordered. The capacity of Yeatman as guardian ad litem, had been recognized, in several important steps taken in the case. By the entry nunc pro tunc, no one was taken by surprise, no one gained an advantage; in the opinion of the court, such an entry was necessary to legalize the proceedings. The debts of the estate were large and no doubt pressing, and it was the interest of the heirs to have them paid; under such circumstances the order was entered. It had every equitable consideration to recommend it, and there was no objection to it, as it seems, of any force. The objection comes after the lapse of near a quarter of a century, when the land, in the hands of the purchasers, their heirs or grantees, by the improvements thereon, and by the growth of the city, has become of immense value, and it is made before a different tribunal from that which authorized the entry: under such circumstances the objection can not be sustained. When the order was made, the parties were still before the court, the cause having been regularly continued to that time, and under the circumstances we are not prepared to say that a court could set aside the proceeding, which exercised a supervisory power over the action of the common pleas—but the only question before us is, whether the order was void. We think it can not be so treated. The questions of law having been considered by the court, gentlemen, but little has been left for your consideration. Your verdict will be made under the opinion of the court expressed.

Certain instructions were asked, which were refused; and the court charged the jury that the county of Hamilton, where the children were born and where their father died, leaving a widow, the step-mother of his minor heirs, and who was entitled to dower in the lands, and who remained, as appears from the evidence, some time in the county, constituted in law the domicil of the minors, their property being there; and that notwithstanding their absence as proved, the court of common pleas, of Hamilton county, had power to appoint a guardian for them. That the facts on which the court acted were not required to be placed on record, and that every presumption was in favor of the action of the court, especially after the lapse of twenty-three years. That the proceedings of the court on the petition of the administrator for the sale of the lands, and the deeds made under the sales, divested the title of the heirs, and vested it in the purchasers.

THE COURT then informed the jury, that by the ruling of the above points of law favorable to the defendants, their verdict would be, not guilty.

Verdict not guilty.

## Case No. 13,252.

### SPRAGUE v. The MARIA.

[See Case No. 13,253.]

SPRAGUE (MATHEWSON v.). See Case No. 9,278.

## Case No. 13,253.

### SPRAGUE et al. v. ONE HUNDRED AND FORTY BARRELS OF FLOUR.

[2 Story, 195;[1] 6 Law Rep. 14.]

Circuit Court, D. Massachusetts. May Term, 1842.

SALVAGE—DERELICT—COMPENSATION—COSTS.

1. The general rule in the admiralty, in cases of derelict, is to allow one moiety of the property saved to the salvors; but this allowance may be enlarged by the circumstances of a particular case, where the services performed are of an extraordinary nature.

2. Under the circumstances of the present case, one moiety of the gross proceeds of the value of the property was decreed to the salvors, with full costs and expenses; the latter to be a charge exclusively upon the other moiety.

This was a libel for salvage of certain goods, and was certified to this court, from the district court, under the act of 3d of March, 1821 (chapter 189), on account of the district judge being related to the libellants. The libel set forth, in substance, that on the 9th of April, 1842, the master and crew of the brig Cambrian, of Boston, discovered a wreck, which they boarded, and discovered that it was the hull of the schooner Maria, of New York, and found, that the said hull, and the cargo on board thereof, were entirely derelict, and without any person on board, and nearly full of water. That the said master and crew attempted to take out the goods, wares, and merchandise, laden in the said schooner, and to convey them on board the said brig Cambrian, but the weather was so tempestuous, and the sea so rough, that they were not

---

[1] [Reported by William W. Story, Esq.]